UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA G. EBERLY, *Individually and as Executrix of the Estate of Bryan L. Eberly, deceased,* Plaintiff | : : : : | |
| v. | : : | No. 5:20-cv-05471 |
| FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C.; BERKLEY INSURANCE COMPANY; BERKLEY MID-ATLANTIC GROUP, Defendants | : : : : : : | |

**O P I N I O N**
Motion to Dismiss, ECF No. 5 - Granted

Joseph F. Leeson, Jr.                                                                                                                              July 13, 2021
**United States District Judge**

**I.**    **Introduction**

       This case involves a dispute about Underinsured Motorists benefits. Plaintiff, Cynthia G. Eberly, Individually and as Executrix of the Estate of Bryan L. Eberly, deceased, filed suit against Defendants, Firemen's Insurance Company, Berkley Insurance Company, and Berkley Mid-Atlantic Group. Eberly seeks to obtain higher Underinsured Motorist ("UIM") benefits and the stacking of UIM benefits from the policy issued to Decedent's employer, BJ Baldwin Electric, Inc., in connection with an automobile accident, in which Bryan L. Eberly was killed while driving a Baldwin vehicle. Defendants have moved to dismiss the Complaint, which is granted for the reasons set forth below.

**II.**    **Background**

       The following facts are taken, in large part, from the Complaint:

On June 23, 2016, Bryan L. Eberly ("Decedent") was permissively operating a motor vehicle owned by BJ Baldwin Electric, Inc. *See* Compl. ¶ 21, ECF No. 1-4. Decedent was driving eastbound on State Route 322, about three-quarter miles east of State Route 72 in Cornwall Borough, Lebanon County, Pennsylvania. *Id*. Danielle Beard was operating a vehicle owned by James and Linda Walp westbound on State Route 322. *Id.* ¶ 22. Beard permitted her vehicle to cross out of the westbound lane and go into the eastbound lane, striking Decedent's vehicle head-on at a high rate of speed, and causing serious injuries, damages, losses, and death to Decedent. *Id.* Following the collision, Decedent was initially trapped in his vehicle. *Id.* ¶ 23. He was responsive and able to answer questions posed by first responders. *Id.* Decedent was transported to Penn State Hershey Medical Center, where he later died as a result of the injuries suffered in the collision. *Id.* ¶ 24.

Decedent's vehicle was insured under a motor vehicle insurance policy issued by Defendants. *Id.* ¶ 27. Defendants issued a commercial auto policy to BJ Baldwin Electric, Inc., with a policy period of July 1, 2015, to July 1, 2016, Policy No. CPA 4202611-46. *Id.* ¶ 28. The named insured on the policy is BJ Baldwin Electric, Inc. *Id.* ¶ 34. The policy issued to Baldwin Electric provides a liability policy limit of $1,000,000.00 per accident, but only UIM coverage of $35,000.00 per accident. *Id.* ¶ 29.

A UIM claim has been made to and accepted by Defendants under the commercial auto policy issued to Baldwin Electric. *Id.* ¶ 30. The vehicle operated by Beard and owned by the Walps, was an underinsured motor vehicle in accordance with Baldwin Electric's commercial auto policy, as the applicable liability coverage limits for the negligence of Beard did not provide the full amount that Eberly seeks to recover for the death of the Decedent. *Id.* ¶ 31.

In response to the claim, Defendants provided a signed rejection of UIM coverage at limits equal to liability coverage limits, dated July 12, 2010, indicating that UIM coverage was selected at a combined single limit of $35,000.00. *Id.* ¶ 33. The signed rejection form provided by Defendants does not identify any policy number that the form relates to and does not indicate the capacity and/or the authority of the signatory to make the purported election on behalf of the named insured. *Id.* ¶¶ 35-36. Defendants also provided a signed rejection of stacked limits of UIM coverage, dated July 12, 2010, that contains the same alleged deficiencies as the rejection of UIM coverage. *Id.* ¶ 37.

In addition to the July 12, 2010 forms, Defendants provided similar rejection of stacking UIM coverage limits and rejection of UIM coverage at limits equal to liability coverage limits forms dated August 6, 2013. *Id.* ¶ 38. Both of the August 6, 2013 forms have the same alleged deficiencies as the July 12, 2010 forms. *Id.* ¶ 39.[1]

On May 1, 2017, Defendants issued payment to Eberly in the amount of $35,000.00 regarding the claimed losses arising from the collision. *Id.* ¶ 40.

On October 2, 2020, Eberly filed suit against Defendants in the Court of Common Pleas of Philadelphia County. *See* Compl. On November 2, 2020, Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania. *See* Notice of Removal, ECF No. 1.

Under Count One of the Complaint, Eberly alleges that the signed rejection of stacking UIM coverage and rejection of UIM coverage at limits equal to liability coverage limits on the

---

[1] Although the Complaint states "July 12, 2020," paragraphs thirty-three, thirty-seven, thirty-eight, forty-four, and forty-five correctly state the year of the forms as "July 12, 2010." Additionally, all the dates throughout the Policy for the applicable forms refer to "July 12, 2010." Accordingly, it appears Plaintiff made a grammatical mistake listing the incorrect year as 2020.

forms dated July 12, 2010, and August 6, 2013, violate Pennsylvania law as they do not indicate any policy number that the forms relate to and do not indicate the capacity and/or the authority of the signatory to make the purported election on behalf of the name insured. *Id.* ¶¶ 44-45. As a result, Eberly seeks a declaratory judgment that Decedent is entitled to UIM coverage at a limit equal to the liability limit set forth in the policy of $1,000,000.00 per accident and stacked UIM coverage in accordance with the number of vehicles insured by the policy. *Id.* ¶¶ 46-47. Additionally, under Count Two, Eberly demands judgment in her favor for UIM benefits in excess of $50,000.00. *Id.* ¶ 51.

Defendants have filed a motion to dismiss on the grounds that BJ Baldwin, signing on behalf of the named insured to the policy, BJ Baldwin Electric Inc.: (1) validly elected a lower UIM benefit, and (2) validly rejected stacking of UIM benefits. Defendants further argue that: (3) Firemen's is the only entity that issued the Policy in question; therefore, the claims against Berkley Insurance Company and Berkley Mid-Atlantic Group should be dismissed, and (4) Eberly's claim seeking declaratory relief is duplicative of the claim for damages for higher UIM benefits, and should thus be dismissed as well. Mot. Dismiss 1, 7, ECF No. 5.

## III.  Legal Standards

### A.  Motion to Dismiss - Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility

4
071220

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

B.     **Contract Interpretation – Review of Applicable Law**

"Under Pennsylvania law, 'the interpretation of a contract of insurance is a matter of law for the courts to decide.'" *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390-91 (3d Cir. 2012) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)). In interpreting an insurance contract, the court must ascertain the intent of the parties from the language of the policy. *See id.* When the terms in a policy are not defined, they should be construed in accordance with their natural, plain, and ordinary meanings. *See Lititz Mut. Ins. Co.*

*v. Steely*, 785 A.2d 975, 978 (Pa. 2001). "The court should not consider isolated individual terms but should instead consider the entire contractual provision to determine the parties' intent." *Robinson v. Allstate Prop. & Cas. Ins. Co.*, 306 F. Supp. 3d 672, 675 (E.D. Pa. 2018). When the policy language is clear and unambiguous, the court will give effect to that language. *See Squires*, 667 F.3d at 390-91. "Exclusions are strictly construed against the insurer." *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). "[A]n insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage. . . ." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).

## IV. Analysis

### A. The election of reduced UIM benefits complied with Pennsylvania law so as to limit the amount of insurance coverage available under the policy.

The Motor Vehicle Financial Responsibility Law ("MVFRL") "requires every motor vehicle insurance policy issued in Pennsylvania to include an offer of both uninsured and underinsured motorist coverage equal to the bodily injury liability amount."[2] *Farmland Mut. Ins. Co. v. Sechrist*, 769 F. App'x 66, 70 (3d Cir. 2019) (citing 75 Pa.C.S. 1731(a)). However, "the purchase of such coverage is "optional," such that the insured can select one of the three options: (a) purchase UIM coverage equal to the bodily injury liability amount, (b) waive UIM coverage

---

[2] "UM [uninsured motorist] coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured, whereas UIM coverage is triggered when a third-party tortfeaser injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full. Stacking refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

completely under Section 1731(c); or (c) elect UIM coverage in an amount less than the bodily injury liability coverage amount under Section 1734." *Id.*

Specifically, Section 1734 states, "a named insured may request in writing the issuance of coverage under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." *Young v. State Farm Mut. Auto. Ins. Co.*, 54 F. App'x 365, 367 (3d Cir. 2002). The Third Circuit has emphasized that Section 1734 "is intended to provide a very simple, clear-cut rule for an insurance company to follow—to lower the limits [of underinsured or uninsured motorist coverage] it must insist on a written authorization signed by the named insured." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 187 (3d Cir. 2021) (citing *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 232 (3d Cir. 1992)). There is no required form for an insured to select a reduced UIM benefit.[3] Under Section 1734, "a valid reduction in UIM coverage requires a written request only." *Emps. Fire Ins. Co. v. Alvarado*, No. CIV. A. 02-CV-6567, 2005 WL 182717, at *3 (E.D. Pa. Jan. 27, 2005). "The statute is silent as to the exact form that this writing must take, though the requirement seems only to be that the writing reflect the insured's choice of lower coverage." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Vollrath*, No. CIV.A.02-1257, 2004 WL 1447836, at *5 (E.D. Pa. June 28, 2004), *aff'd,* 132 F. App'x 414 (3d Cir. 2005)).

In addition, Pennsylvania law recognizes the validity of a corporate contract "even where the contract does not state that it is being signed by a corporate officer in his corporate capacity."

---

[3] Eberly repeatedly uses the term "rejection" of UIM benefits in the Complaint and in the Response in Opposition to the Motion to Dismiss. However, this case involves a reduction of UIM coverage, not a rejection. Rejection of UIM coverage requires use of a specific form under § 1731 whereas the election of reduced UIM coverage under § 1734 has no statutorily prescribed form. *See Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 900 (Pa. 2011); *Farmland Mut. Ins. Co.,* 769 F. App'x at 70; *State Farm Mut. Auto. Ins. Co. v. Ciccarella*, No. 01-1211, 2002 U.S. Dist. LEXIS 7698, at *12 (E.D. Pa. May 1, 2002).

*In re Nicastro*, No. 92-22133, 1993 WL 86465, at *2–3 (E.D. Pa. Mar. 23, 1993). *See also Ackerman v. Huston (In re J & B Delivery Corp.)*, 22 B.R. 373, 374 (Bankr. E.D. Pa. 1982) (stating that "a contract by a corporate officer or agent need not be made and signed in the name of the corporation if it was the intention of the parties to bind the corporation.").

In this case, there was a written election of reduced UIM coverage and there is no question that the policy contract is specifically with BJ Baldwin Electric, Inc. First and foremost, Eberly concedes in her Complaint that the policy was issued to BJ Baldwin Electric Inc. *See* Compl. ¶ 28; UIM Coverage form. Further, the exhibits provided by both parties illustrate that the policy is clearly with BJ Baldwin Electric, Inc. The same is true as to the UIM election. On the form titled "Pennsylvania Underinsured Motorist Coverage Selection of Limits," the "Applicant/First Named Insured" for the policy is listed as "BJ Baldwin Electric, Inc."[4] UIM Coverage Supp. Form, Joint Ex. A. ECF No. 11. The first page of this form provides a general description of Pennsylvania's UIM coverage and available options. *See id.* Page two of the form illustrates a list of varying coverage limits, ranging from $35,000 to $1,000,000. UIM Coverage Form, Ex. B, ECF No. 1-4. In accordance with the form's directions, "BJB" is initialed next to the line, indicating a selection of lower coverage limits at $35,000. *Id.* Above the "Applicant's/First Named Insured's Signature" line, the signature is written as "BJ Baldwin." *Id.* The requirements of Section 1734 are therefore satisfied.

---

[4] Pursuant to the Order of June 24, 2021, the parties submitted a complete copy of the reduction of UIM coverage form, dated July 12, 2010. Because Plaintiff makes no allegation that the election of lower UIM coverage has changed, it appears that there was a continuation of coverage under the policy. Furthermore, based on the fact that page two of the 2013 form was identical to page two of the 2010 form, the Court infers that the reduction of UIM coverage form, dated August 6, 2013, in Exhibit D of the Complaint, displays the same content on the first page as page one of the form dated, July 12, 2010.

Based upon the named insured that is listed on the first page of the form, being BJ Baldwin Electric Inc., and the signatory for the named insured that is listed on the second page of the form, as BJ Baldwin, the signed forms clearly indicate that BJ Baldwin signed on behalf of the company. There are no allegations that anyone other than BJ Baldwin has been the signatory for the company throughout the existence of the policy. *See Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1196 (Pa. 2012) ("[W]e begin and end with the generally accepted premise that a corporation can only act through its officers, agents, and employees."). Furthermore, there is no confusion that BJ Baldwin might have been signing on behalf of himself individually and not the company because to the extent that individuals were covered under the policy, such documents provide the company name and then expressly list the individually named insured. For example, on the form for "Broadened First-Party Benefits," the form specifically includes the individual names of Barry J Baldwin, Linda H Baldwin, and six others by name. *See* Policy 51, ECF No. 7-2. Similarly, the Broadened Coverage for Named Individuals lists the individual insured by name, in addition to BJ Baldwin Electric, Inc. *Id.* 56-62. As to the UIM election, however, Barry J Baldwin was not listed individually, only BJ Baldwin Electric, Inc. is listed as the insured, which confirms that BJ Baldwin signed the UIM election on behalf of the corporate entity, BJ Baldwin Electric. Inc.

Additionally, although Eberly is correct in that the policy number is not listed on the reduced UIM coverage forms, because there is not more than one policy requesting lower UIM coverages and because other documents in the policy specify the relevant policy number, the UIM forms are sufficiently clear. For example, the form, "Schedule of Forms and Endorsements," identifies the relevant policy number, CPA 4202611-46, at the top left of the document. *See* Policy 16. The form then identifies the coverage forms by number that are

applicable to the policy, including the Mobile Equipment and UIM Coverage, Nonstacked endorsements. *See id.* Each of these endorsements to the commercial auto policy list the name of the insured as BJ Baldwin Electric, Inc. and the limit of insurance for UIM as $35,000, nonstacked. *See* Policy 36-45. Consequently, the election of reduced UIM coverage in the amount of $35,000 is valid and enforceable.

> **B. Pennsylvania law does not mandate the stacking of UIM coverage under a commercial fleet policy. Although not required by law, BJ Baldwin Electric, Inc. nevertheless executed valid waivers of stacking under the Policy.**

Section 1738 of the MVFRL governs "the stacking of uninsured and underinsured motorists benefits as well as the waiver of such stacking."[5] *Stockdale v. Allstate Fire & Cas. Ins. Co.*, 441 F. Supp. 3d 99, 102 (E.D. Pa. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Powell*, 879 F. Supp. 538, 540 (W.D. Pa. 1995)). For a personal automobile insurance policy, "Section 1738 of the MVFRL makes stacked coverage the default, and . . . this default can only be waived by a signed rejection of such coverage." *Shepherd v. Talotta*, No. CV 20-1046, 2021 WL 1582400, at *4 (E.D. Pa. Apr. 22, 2021). To effectuate a waiver of UM/UIM coverage, "an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage." *Gallagher*, 201 A.3d at 137. Section 1738(d) provides in relevant part:

> (d) Forms.
> . . .(2)
> > The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

---

[5]    *See* 75 Pa.C.S. § 1738(b) ("Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.").

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.
>
> _____
> Signature of First Named Insured
>
> _____
> Date

75 Pa.C.S. § 1738(d). Furthermore, Section 1738(e) states that, "the forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void." *Id.*

However, in the context of stacking coverage under a commercial fleet policy, the Pennsylvania Supreme Court held that the stacking of uninsured or underinsured motorist coverage, pursuant to Section 1738, is not required. *See Webb v. Discover Prop. & Cas. Ins. Co.*, No. 3:08cv1607, 2009 U.S. Dist. LEXIS 86609, at *9 (M.D. Pa. Sep. 22, 2009) (citing *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 307 (Pa. 2007) (explaining that "language employed by the Legislature indicates, the General Assembly intended to exclude commercial fleet policies from its purview.") *See also Rarick v. Federated Serv. Ins. Co.*, 325 F. Supp. 3d 590, 599 (E.D. Pa. 2018) (explaining that "the mandatory stacking of UM/UIM benefits under § 1738 in a commercial fleet context [has been described] as 'patent absurdity,' [due to] the astronomical costs that such a requirement would levy on the corporation purchasing the policy" (citing *Douglas v. Discover Prop. & Cas. Ins. Co.*, 810 F. Supp. 2d 724, 730 (M.D. Pa. 2011))).

The Pennsylvania Motor Vehicle Code defines a fleet owner as "a person or entity which owns or leases 15 or more vehicles." 75 Pa. C.S. § 102. *See also Lehman v. Nationwide Mut. Ins.*

*Co.*, Civil Action No. 88-5973, 1990 U.S. Dist. LEXIS 7756, at *6 (E.D. Pa. June 10, 1990). In this case, BJ Baldwin Electric Inc. owns and operates more than fifteen vehicles. Specifically, the "Business Auto Declarations," form lists twenty-five vehicles covered under the operative policy number, CPA 4202611-46. *See* Policy 2-9. The instant Policy is therefore a commercial fleet policy and Eberly's claims for stacking fail as a matter of law.

Moreover, although stacking under such a commercial fleet policy is not mandated by law and a waiver of stacking was unnecessary, BJ Baldwin Electric, Inc. executed waivers rejecting stacking of UIM coverage, dated July 12, 2010, and August 6, 2013. *See* Stacking Waivers, Exs. C and E, ECF No. 1-4. The rejection of stacking UIM coverage forms are dated accordingly and signed by BJ Baldwin on behalf of the first named insured, BJ Baldwin Electric, Inc. For the reasons set forth in the section above, Eberly's assertions that the signature of BJ Baldwin is insufficient to bind the company and that the stacked waivers do not list the Policy number are unpersuasive. As with the election of lower UIM coverages, the stacking waivers list the "Applicant/First Named Insured" for the policy as BJ Baldwin Electric, Inc., and are signed by BJ Baldwin above the "Applicant/First Named Insured's Signature" line.

Accordingly, the forms clearly indicate that BJ Baldwin signed waivers rejecting stacked UIM benefits under the Policy on behalf of the corporation, and there are no allegations that BJ Baldwin Electric, Inc. had another policy. Because the stacking waivers track the exact language of Section 1738(d)(2) of the MFVRL, this Court finds that, although not required, BJ Baldwin executed a valid rejection of stacked UIM coverage on behalf of the named insured corporation, BJ Baldwin Electric, Inc. Therefore, the claims would fail on this additional ground.

### C. The Court need not address Eberly's remaining arguments at this time, but grants her leave to file an amended complaint.

Defendants contend that Berkley Insurance Company and Berkley Mid-Atlantic Group are improper parties to this action and that Count One for declaratory relief is duplicative of Count Two for damages of higher UIM benefits. *See* Mot. Dismiss 1, 7. At this time, the Court will not review these arguments because the Complaint is being dismissed.

Although this Court questions whether Eberly will be able to amend to state a claim that she is entitled to more than $35,000 in UIM coverage, the Court nevertheless grants leave to amend this particular claim. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). However, because Eberly's claim for stacking fails as a matter of law, amendment would be futile and is denied as to that particular claim.

## V. Conclusion

Defendants' Motion to Dismiss is granted. First, as to Eberly's claims seeking more than $35,000 in UIM coverage, it is clear that BJ Baldwin's signature on the election forms was on behalf of the corporate entity and that Baldwin validly elected a lower UIM benefit. In an abundance of caution, Eberly is granted leave to amend this claim. Second, as to Eberly's request for stacking, Baldwin provided valid waivers of stacking UIM benefits. Additionally, the Policy provides coverage relating to BJ Baldwin Electric's fleet of commercial vehicles and, as a matter of law, stacking is not allowed for a commercial fleet policy. This claim is therefore dismissed with prejudice. Finally, because the Complaint is dismissed, the Court will not address at this time Eberly's contentions regarding whether Berkley Insurance Company and Berkley

Mid-Atlantic Group are appropriate parties and whether the counts for declaratory judgment and damages for higher UIM benefits are duplicative.

    A separate order follows.

                                      BY THE COURT:

                                      */s/ Joseph F. Leeson, Jr.*
                                      JOSEPH F. LEESON, JR.
                                      United States District Judge